# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE EDWARD MADRID,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No.  1:20-cv-01006-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL AND ENTERING JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY<br><br>(ECF Nos. 19, 20, 21) |

## I.

## INTRODUCTION

Jose Edward Madrid ("Plaintiff or "Madrid") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from diabetes mellitus with neuropathy; hypertension; insomnia; mild to moderate facet degenerative changes; obesity; and status-post stroke.  For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

---

[1]  The parties have consented to the jurisdiction of a United States Magistrate Judge and this action has been assigned to the undersigned Magistrate Judge for all purposes.  (ECF Nos. 8, 11, 12.)

## II.

## BACKGROUND

### A.    Procedural History

On February 22, 2017, and April 20, 2017, Plaintiff filed Title II and XVI applications for a period of disability, disability insurance benefits, and supplemental security income, alleging a period of disability beginning on August 31, 2013.   (AR 275-278, 279-287.)[2] Plaintiff's claim was initially denied on June 2, 2017, and denied upon reconsideration on July 18, 2017.  (AR 131-135, 139-145.)

On August 2, 2017, Plaintiff requested a hearing before an administrative law judge. (AR 146.)  Plaintiff appeared before Administrative Law Judge Major Williams Jr. (the "ALJ"), for administrative hearings on April 2, 2019, and August 8, 2019.   (AR 56-67, 68-78.)   On August 16, 2019, the ALJ issued a partially favorable decision with an established onset date of November 15, 2018.  (AR 37-55.)   On May 26, 2020, the Appeals Council denied Plaintiff's request for review.  (AR 1-6.)

Plaintiff filed this action on July 21, 2020, and seeks judicial review of the denial of the application for disability benefits.  (ECF No. 1.)  On May 10, 2021, Plaintiff filed an opening brief.  (ECF No. 19.)  On June 9, 2021, Defendant filed a brief in opposition.  (ECF No. 20.)  On June 22, 2021, Plaintiff filed a reply brief.  (ECF No. 21.)

### B.    Hearing Testimony

Two hearings were conducted in this matter before the same ALJ, one on April 2, 2019, and one on August 8, 2019.

1.    The April 2, 2019 Hearing

Plaintiff testified at the April 2, 2019 hearing with the assistance of counsel.  (AR 56-67.) On the date of the hearing, Plaintiff was 63 years old.  (AR 58.)  Plaintiff alleged an onset date of

---

[2] Plaintiff filed a prior application that was denied on April 18, 2016.  (AR 104.)  As discussed herein, the ALJ found no new and material evidence that would justify the reopening of the prior application.  (AR 41.)  Plaintiff submits this rationale is not legally sufficient as a determination can be reopened within 12 months of the date of the notice of the initial determination for any reason, 20 C.F.R. §§ 404.988(a) and 416.1488(a), and argues the ALJ erred by failing to reopen the prior application.  (Br. 3 n.1.)  Plaintiff's only discussion of this argument is contained in one footnote.  (Id.)  The Court addresses this argument herein.  At the August 8, 2019 hearing, Plaintiff, through hearing counsel, amended the August 13, 2013 onset date to September 1, 2015.  (Br. 3 n.2; AR 76.)

August 31, 2013, a year that he earned $78,633, and had a date last insured of December 31, 2018.  (Id.)  Plaintiff's counsel informed the ALJ that Plaintiff was suffering from a swollen tongue the day of the hearing and that it may be difficult for the ALJ to understand him.  (AR 59.)

The ALJ first elicited testimony from the Vocational Expert Stacia Schonbrun (the "VE").  (Id.)  Plaintiff confirmed that he worked as an agricultural field supervisor, and also performed field labor.  (AR 59-60.)  The VE first considered classifying the work under the DOT title of harvest worker, agricultural worker, DOT 404.687-014, heavy with an SVP of 1.  (AR 60.)  However, Plaintiff would supervise a crew of up to 50 people.  (Id.)  The ALJ, counsel, and the VE then agreed the work should be classified as field crop supervisor, or supervisor picking crew, DOT 404.131-010 or 409.131-010, medium with an SVP of 7.  (AR 60-61.)

The ALJ asked Plaintiff about why work was somewhat abruptly stopped in 2013, and whether there was an accident at work.  (AR 62.)  Plaintiff responded that he did not have the mindset of working too much.  (Id.)

The ALJ noted there did not appear to be medical records supporting disability before the first consultative exam in 2015, which showed a range of medium work with some postural limitations.  (AR 63.)  The ALJ noted Dr. Gabriel's medical source statement from February 22, 2019, and then another at 13F,[3] and the ALJ began stating such record showed a limitation to medium work.  Counsel interjected and clarified that 13F would be limited to light work, lifting 35 to 40 pounds, and 25 pounds frequently.  The ALJ noted that a 25 pound lifting restriction is in the range of medium work, so somewhere between medium and light, but stated to the extent he can lift 25 pounds frequently, it would take the assessment out of the light category.  The ALJ asked what evidence there was to support a light RFC.  Counsel offered the medical source statement from Dr. Gabriel, Ex. 18F, who had seen Plaintiff since September 1, 2015.  (AR 63-64.)  Counsel submitted that Dr. Gabriel's opinion should be given great weight, with a less than a sedentary RFC.  (AR 64.)

---

[3]  Ex. 13F refers to an internal medicine consultative examination dated May 11, 2017, from Dr. Sachdeva.  (AR 475-80.)

1      The ALJ responded that he did not think he could take the opinion all the way back to the
2  alleged onset date, as Dr. Gabriel only started seeing Plaintiff in 2015.  (AR 64.)  Counsel
3  responded that he would be agreeable to amend the onset date to when Dr. Gabriel first saw
4  Plaintiff in September of 2015; and also submitted that if a person could only stand and walk for
5  six hours of an eight hour workday, such person couldn't perform the job that Plaintiff
6  performed, and such limitation would eliminate medium work as most medium work would have
7  to be standing for eight hours of the workday.  (AR 64.)

8      The ALJ presented the VE with a hypothetical person with the Plaintiff's vocational
9  history who could perform a range of medium work six hours in an eight hour workday, stand
10  and walk six hours in an eight hour workday, sit six hours in an eight hour workday, with lifting
11  limited to 35 to 45 pounds occasionally and 25 pounds frequently, carrying limited to 25 pounds
12  occasionally and 15 pounds frequently, and who is capable of performing frequent climbing,
13  balancing, stooping, kneeling, crawling, and crouching.  (AR 65.)  The VE testified that such
14  person could perform past work, however hesitated given the carrying limitations were close to
15  the limitations given medium exertion is 25 to 50 pounds.  (Id.)

16      The ALJ then found it necessary to continue the hearing due to the Plaintiff's swollen
17  tongue, and also decided to hold the next hearing with an orthopedic doctor present to give
18  testimony.  (AR 66.)

19          2.      The August 8, 2019 Hearing

20      Plaintiff testified at the August 8, 2019 hearing with the assistance of counsel.  (AR 68-
21  78.)  Plaintiff was again 63 years old on the date of the hearing.  (AR 70.)  The ALJ noted
22  Plaintiff was alleging an onset date of August 31, 2013.  (Id.)

23      In an opening statement, counsel noted Ex. 23F demonstrated Plaintiff had a stroke the
24  date of the last hearing, related to the swollen tongue.  (AR 71-72.)  On that date, Plaintiff went
25  to the hospital, was diagnosed with an acute stroke, and an occluded left vertebral artery
26  approximal intercranial left internal carotid artery.  (AR 72.)  Counsel noted an angiogram dated
27  June 15, 2019, showed minimal constitution of the left internal carotid artery at the cavernous
28  segment extending to the ICA terminus multifocal arthroscuroloctic stenosis of the posterior

1   cerebral arteries and minimal cerebral arteries bilaterally.   (AR 72.)   Counsel stated that

2   unfortunately, the stroke was after the date last insured.

3        Counsel also highlighted Ex. 18F, the medical source statement from Dr. Gabriel dated

4   February 22, 2019 (AR 559-562), found essentially that Plaintiff had uncontrolled diabetes,

5   hypertension, chronic low back pain, neuropathy, and opined Plaintiff to be dysfunctional, able

6   to lift five pounds or less, with being off task 30% of the day, and missing four days of work in a

7   month.  (AR 72-73.)

8        The medical expert Dr. Thompson (the "ME"), an orthopedic surgeon, then testified.

9   (AR 73.)   The ME testified there was evidence in the record of back pain with trigger points

10  treated with trigger point releases, with a normal gait and neurological exam in May of 2015 (Ex.

11  1F at 1, AR 416).  The ME noted a December 16, 2015 record, with paraspinal complaint of pain

12  with no lower extremity radiation of pain, slightly reduced lumbar spine range of motion, normal

13  gait and heel/toe walking, normal strength and reflexes with a stocking-type sensory decrease in

14  both lower extremities, but no loss of equilibrium stated, and negative straight leg raising (5F at

15  1, AR 439).  (AR 73-74.)  The ME acknowledged a later exam in May of 2017 noted back pain

16  when standing upright, normal lumbar spine range of motion, normal pulses, reflexes, and

17  strength in the extremities, negative  straight leg raising, and a decreased sensation in both feet.

18  (AR 74.)  The ME noted later imaging showed mild levoscoliosis with mild disc space narrowing

19  at L3-4 through L5-S1, with mild to moderate percent changes in 4-5 and 5S-1, and mild

20  retrolisthesis at 3-5 (Ex. 19F at 1).  The ME noted a lumbar spine x-ray was done in February of

21  2019.  The ME stated that unfortunately no advanced imaging of the spine is seen, and no loss of

22  balance is seen in the evidence submitted.

23        The ME opined the medical evidence far outweighed the orthopedic muscular skeletal

24  evidence with hypertension, obesity, and insulin dependent but total uncontrolled diabetes

25  mellitus.  (AR 74.)  The ME noted that in October of 2018, the hemoglobin A1C was at a 14, a

26  potentially lethal level.  (Id.)  The ME noted insomnia, benign prostatic hypertrophy, a cataract

27  surgery, and poor compliance with medication.  (Id.)  The ME noted the recent stroke, and stated

28  that all of these issues would affect the Plaintiff's ability to function and work, in his opinion, far

1   more than the objective orthopedic issues.  (AR 74-75.)  The ME stated that strictly based on the

2   orthopedic issues, the ME could give a somewhat limited RFC that does not take into account the

3   effects of out-of-control diabetes or mental issues.  (AR 75.)  The ME stated there could be

4   balance issues, but balance issues were not mentioned because of the evidence of loss of feeling

5   in the feet which the ME stated is extremely common in uncontrolled diabetes as an ultimate

6   polyneuropathy.

7          The ME stated the overall evaluations in the record may be more appropriate, stating

8   such evaluations are based more on the overall medical issues than the specific objective

9   muscular skeletal evidence.  The ALJ asked whether Dr. Gabriel's opinion captured Plaintiff's

10  physical limitations, and the ME stated he thought it did, and stated it did include the medical

11  issues cited in the record and the objective orthopedic evidence seen, which the ME again noted

12  was not very helpful in the absence of advanced imaging.  (AR 75-76.)  The ME stated there

13  were issues and factors outside of his field of expertise, such as difficulty hearing, and given

14  memory issues could be associated with the diabetes, found he could not disagree with Dr.

15  Gabriel's opinion.  (AR 76.)

16         The ALJ asked Plaintiff when he began seeing Dr. Gabriel, and Plaintiff answered about

17  four years before the hearing.  The ALJ noted that would take the treatment back to 2015, stating

18  that "seem[ed] reasonable."  (Id.)  The ALJ noted the internal medicine consultative exam in

19  2017 had Plaintiff at light, and asked counsel if he had a proposal for an onset date.  Counsel

20  responded with September 1, 2015, and answered the basis for such date was the fact he had

21  been seeing Dr. Gabriel for many years; that Plaintiff stopped working because of his

22  uncontrolled diabetes and hypertension; that those conditions and the records reflect non-

23  controlled diabetes and hypertension; and the September 1, 2015 date was 17 months prior to the

24  application date, the earliest date Plaintiff could be get paid.  The ALJ state he found such

25  proffer to be reasonable, and that he would adopt it.  (AR 77.)

26         C.     The ALJ's Findings of Fact and Conclusions of Law

27         The ALJ made the following findings of fact and conclusions of law:

28         • Plaintiff meets the insured status requirements of the Social Security Act through

December 31, 2018.

- Plaintiff has not engaged in substantial gainful activity since the amended alleged onset date of September 1, 2015.

- Since the amended alleged onset date of disability, September 1, 2015, Plaintiff has had the following severe impairments: diabetes mellitus with neuropathy and mild to moderate facet degenerative changes.

- Beginning on the established onset date of disability, November 15, 2018, Plaintiff has had the following severe impairment: diabetes mellitus with neuropathy; hypertension; insomnia; mild to moderate facet degenerative changes; obesity; and status-post stroke.

- Prior to November 15, 2018, the date Plaintiff became disabled, Plaintiff had the residual functional capacity to perform medium work as defined in 20 CFR Part 404.1567(c) and 416.967(c) except: stand and walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; lifting limited to 35 to 40 pounds occasionally and 25 pounds frequently; carrying limited to 25 pounds occasionally and 15 pounds frequently; he is capable of performing frequent climbing, balancing, stooping, kneeling, crawling, and crouching.

- Since September 1, 2015, Plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

- Beginning on November 15, 2018, the date Plaintiff became disabled, the Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR Part 404.1567(c) and 416.967(c) except: he is capable of performing occasional climbing, balancing, stooping, kneeling, crawling, and crouching.

- Prior to November 15, 2018, Plaintiff was capable of performing past relevant work as a field crop supervisor (D.O.T. 404.131-010, medium, SVP 7).  This work did not require the performance of work-related activities precluded by Plaintiff's residual functional capacity.

- Beginning on November 15, 2018, Plaintiff's residual functional capacity has prevented

Plaintiff from being able to perform past relevant work.

- Plaintiff was an individual closely approaching retirement age on November 15, 2018, the established disability onset date.

- Plaintiff has at least a high school education and is able to communicate in English.

- Plaintiff does not have work skills that are transferable to other occupations within the residual functional capacity defined above.

- Since November 15, 2018, considering the Plaintiff's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform.

- Plaintiff was not disabled prior to November 15, 2018, but became disabled on that date and has continued to be disabled through the date of the decision. Plaintiff's disability is expected to last twelve months past the onset date.

(AR 41-48.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[4] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

---

[4] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. § 404.1501 et seq., and Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq. The regulations are generally the same for both types of benefits. Further references are to the disability insurance benefits regulations, 20 C.F.R. §404.1501 et seq.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a *whole*, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

# IV.

## DISCUSSION AND ANALYSIS

### A.    Plaintiff's Arguments on Appeal

Plaintiff contends the ALJ failed to provide Plaintiff with a full and fair hearing, and that the ALJ's determination that Plaintiff was not disabled prior to November 15, 2018, is not supported by substantial evidence.  (Pl.'s Opening Br. ("Br.") 6-11, ECF No. 19.)  Specifically, Plaintiff submits that the ALJ: (1) failed to properly evaluate the medical evidence in assessing Plaintiff's Residual Functional Capacity ("RFC") for the period prior to November 15, 2018, by failing to provide an adequate explanation for how he found Plaintiff disabled on such date but not prior to such date, 20 C.F.R. §§ 404.1520(e) and 416.920(e); and (2) failed to articulate specific and legitimate reasons for rejecting Dr. Gabriel's opinions for the period prior to November 15, 2018, Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995) ("Dr. Kho's 1987 statements were made before Lester underwent a comprehensive psychological assessment— and, therefore, before Dr. Kho was aware of the full extent of Lester's psychiatric impairment. Because his later opinion was based on a more complete evaluation of the combined impact of *all* of Lester's impairments, that opinion should be accorded greater weight.").  (Br. 7-8.) Plaintiff otherwise stipulates that the ALJ fairly and accurately summarized the medical evidence of record except for where specifically stated within the briefing.  (Br. 5.)

The Court summarized the hearing testimony above, including the fact the April 2, 2019 hearing was continued due to Plaintiff's swollen tongue.  Plaintiff acknowledges, and the Court notes the ALJ's hypothetical presented to the VE at the first hearing matched the ALJ's RFC assessment for the period prior to November 15, 2018, and the VE testified such person could perform past work.  (Br. 6; AR 65-66.)

Plaintiff highlights the ME Dr. Thompson's testimony at the August 8, 2019 hearing that the non-orthopedic impairments would affect Plaintiff's ability to function and work "far more than the objective orthopedic issues" (Br. 7; AR 74-75.); and that Dr. Gabriel's medical source statement (Ex. 18F, AR 559-562), captured Plaintiff's physical limitations and that he could not disagree with Dr. Gabriel's assessment.  (Br. 7.)

1    At the August 8, 2019 hearing, the ALJ noted that Plaintiff had been of advanced age as

2    of 2013.  The ALJ asked Plaintiff how long he had been treating with Dr. Gabriel, and Plaintiff

3    answered about 4 years.  The ALJ stated 2015 was reasonable, and noted the 2017 internal

4    medical medicine consultative exam had assessed Plaintiff at light.  (Br. 7; AR 76, 475-480.)

5    As summarized above, the ALJ asked counsel for a proposed onset date, counsel

6    proposed September 1, 2015, and the ALJ found such date to be reasonable and expressly

7    adopted it.  (AR 76-77.)  Plaintiff argues that he and his hearing counsel reasonably relied on the

8    ALJ's adoption and did not ask further questions of the ME, and the ALJ then dismissed the ME,

9    and closed the hearing without taking any additional testimony from Plaintiff or the VE.  (AR

10   77.)  The ALJ found Dr. Gabriel's opinion to be supported by the ME's testimony and consistent

11   with no more than light work, but only beginning on November 15, 2018 (AR 46), and  Plaintiff

12   highlights the written opinion makes no reference regarding the discussion with counsel at the

13   hearing about the adoption of the onset date.  (Br. 7.)

14   Plaintiff argues that Dr. Gabriel's opinions are consistent with the medical evidence as of

15   September 1, 2015.  While the ALJ found that Plaintiff's hypertension, insomnia, and obesity

16   were severe only as of November 15, 2018, Plaintiff submits these severe impairments were

17   well-documented as of September 1, 2015 (AR 455-462, 481-485, 488, 490-494).

18   Plaintiff emphasizes his diabetes is uncontrolled; that between September 1, 2015 and

19   July 19, 2016, Plaintiff's blood sugar fluctuated from a low of 150 to a high of 410 (AR 455-462,

20   492-494); on April 15, 2016, Plaintiff's hemoglobin A1c was noted at 10.4 (AR 455); on

21   October 20, 2016, Plaintiff's A1c was noted at 11.7 (AR 490); on April 25, 2017, Dr. Gabriel

22   noted an A1c of 14 (AR 483); and the ME Dr. Thompson testified that a hemoglobin A1c of 7 is

23   what is to be expected, and that a 14 is potentially lethal (AR 74).  (Br. 8.)

24   Plaintiff argues he and his counsel clearly relied on the ALJ's statements made at the

25   August 8, 2019 hearing, and a reading of the statements leads to only one conclusion: that the

26   ALJ would issue a fully favorable decision as of September 1, 2015, the amended onset date.

27   (Br. 8-9.)  Plaintiff submits that if the ALJ had expressed concern about the amended onset date,

28   Plaintiff could have asked the ME if the September 1, 2015 date was reasonable, as the

1   regulations allow for questioning of any witnesses, and Plaintiff was not afforded this

2   opportunity, Richardson v. Perales, 402 U.S. 389, 400–01 (1971) ("There emerges an emphasis

3   upon the informal rather than the formal . . . these hearings, should be understandable to the

4   layman claimant, should not necessarily be stiff and comfortable only for the trained attorney,

5   and should be liberal and not strict in tone and operation."). Plaintiff emphasizes that the

6   adjudicate process and procedures remain "unusually protective" of claimants, Smith v.

7   Berryhill, 139 S. Ct. 1765, 1776 (2019). (Br. 9.)

8          Plaintiff submits that he was denied due process because of his reliance on the ALJ's

9   statements, and that in light of the ME testimony and the ALJ's statement that the amended onset

10  date was reasonable and adopted, the decision should be reversed and the Court should find

11  Plaintiff to have been disabled as of September 1, 2015. (Br. 9.) Alternatively, Plaintiff requests

12  remand for further proceedings to allow for additional testimony from the ME Dr. Thompson.

13  (Br. 9.)

14         **B.      Summary of the Relevant Portions of the ALJ's Decision**

15         In a heading, the ALJ found that since the "amended alleged onset date of disability,

16  September 1, 2015," Plaintiff suffered from the following severe impairments: diabetes mellitus

17  with neuropathy and mild to moderate facet degenerative changes. (AR 44.) The opinion then

18  proceeds to the next heading, without a body of analysis under the previous heading. The next

19  heading states that beginning on the "established onset date of disability, November 15, 2018,"

20  Plaintiff suffered from the following severe impairments: diabetes mellitus with neuropathy,

21  hypertension, insomnia, mild to moderate facet degenerative changes, obesity, and status-post

22  stroke. (AR 44.) There, the ALJ found that prior to the established onset date ("EOD")[5] of

23  November 15, 2018, Plaintiff had the RFC to perform medium work with the following specific

24  restrictions: stand and walk six hours in an eight-hour workday; sit six hours in an eight-hour

25  workday; lifting limited 35 to 40 pounds occasionally and 25 pounds frequently; carrying limited

26  to 25 pounds occasionally and 15 pounds frequently; and capable of performing frequent

27

28  [5] As established by the ALJ in the opinion.

1  climbing, balancing, stooping, kneeling, crawling, and crouching.  (AR 44.)

2        In making the RFC determination, the ALJ acknowledged that from May 23, 2016, to

3  July 19, 2016, Plaintiff saw Dr. Gabriel for diabetes, hypertension, and back pain.  (AR 44.)  The

4  ALJ noted the physical examinations were normal on these dates (14F at 12-14), and that from

5  September 22, 2016 to May 16, 2017, Plaintiff reported back pain on November 3, 2016, and

6  August 24, 2017 (14F at 2-11; 17F at 21).

7        The ALJ stated that on May 11, 2017, consultative examiner Dr. Sachdeva found Plaintiff

8  was capable of medium after a physical examination revealed full strength and range of motion

9  in all joints and muscle groups, but decreased sensation on the soles of the feet; walked with

10  normal gait; grip strength was 75 pounds in the right hand and 65 pounds in the left (13F at 1-5).

11  (AR 44.)[6]  The ALJ adopted Dr. Sachdeva's RFC statement finding it consistent with the

12  medical evidence of record, noting Plaintiff again reported back pain on June 16, 2017, and that

13  a physical exam was normal on such date (14F at 11).  The ALJ stated these limitations were

14  consistent with the ME's testimony at the hearing concerning minimal orthopedic findings.  (AR

15  44.)

16        The ALJ assigned the greatest weight to the opinion of Dr. Sachdeva because it was

17  supported by Dr. Sachdeva's observation, and was consistent with the medical evidence of

18  record, which the ALJ found only showed sporadic reports of lower back pain (13F at 1-5).  (AR

19  44.)  The ALJ assigned "some weight" to the medium RFC statements of the State agency

20  medical consultants finding them to be consistent with the medical evidence of record, including

21  Dr. Sachdeva's observations and opinions.  (AR 44.)  The ALJ assigned little weight to the "less

22  than sedentary" opinions of Dr. Gabriel before the EOD, finding them to be inconsistent with

23  Plaintiff's normal physical examinations, Plaintiff's sporadic reports of back pain, and the ME

24  Dr. Thompson's hearing testimony.  (AR 45.)

25        The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting

26

27  [6]  The ALJ stated that Dr. Sachdeva "opined claimant was limited to less than medium work."  (AR 44.)

28  In briefing, Plaintiff states that the ALJ stated the 2017 consultative exam assessed Plaintiff at light.  (Br. 7; AR 76, 475-80)

1   effects of symptoms were not fully supported prior to November 15, 2018, and that beginning on
2   November 15, 2018, the EOD that Plaintiff became disabled, Plaintiff had the RFC to perform
3   light work except: he was capable of performing occasional climbing, balancing, stooping,
4   kneeling, crawling, and crouching.   (AR 45.)   The ALJ stated Plaintiff's allegations were
5   inconsistent with the medical evidence of record prior to the EOD.   (AR 46.)   Noting the
6   allegations of disability due to diabetes, hypertension, and back pain, the ALJ then summarized
7   that the ME testified Plaintiff's: (1) overall medical longitudinal evidence outweighed the
8   orthopedic elements of the case; (2) diabetes was totally uncontrolled; (3) hemoglobin A1c was
9   at 14 in October 2018, a lethal level; and (4) limitations extended to his feet where the medical
10  evidence showed loss of sensation in his bilateral feet.   (AR 46.)

11      The ALJ acknowledged that Plaintiff submitted treatment records with Dr. Gabriel with
12  physical examinations that showed a diagnosis of diabetic noncompliance, with hemoglobin A1c
13  as high as 14, hypertension, and insomnia.   (AR 46.)   The ALJ noted Plaintiff alleged significant
14  limitations from headaches and dizziness, and although Dr. Gabriel's reviews of systems did not
15  appear to record the complaint, the ALJ found it reasonable to assume this was an oversight in
16  view of the high A1c levels.

17      As for Dr. Gabriel's February 22, 2019 treating source statement limiting Plaintiff to less
18  than sedentary work, the ALJ acknowledged the ME supported this opinion based on his review
19  of the longitudinal record.   The ALJ concluded that the combination of impairments found in Dr.
20  Gabriel's assessment along with the ME's testimony, were consistent with no more than light
21  work.   (AR 46.)

22      The ALJ found that beginning on November 15, 2018, Plaintiff's allegations regarding
23  his symptoms and limitations were consistent with the evidence; and that moreover, in April of
24  2019, the Plaintiff had the stroke that would be expected to reduce his RFC to light work.   (AR
25  46.)   The ALJ stated that Plaintiff did not seek help for this condition until June of 2019, when
26  MRI studies showed evidence of scattered late acute to subacute infarcts (20F at 1).   The ALJ
27  cited the fact Dr. Osborne noted Plaintiff did not go to a doctor after a fall that affected his
28  speech such that he could only mumble afterward (23F at 1).

1   Finally, the ALJ gave significant weight to the opinion of the ME Dr. Thompson, as well

2   as Dr. Gabriel's, but only after the EOD.  The ALJ concluded the Plaintiff's impairments could

3   cause a reduction in the RFC because the evidence of record demonstrates the uncontrolled A1c

4   in October of 2018 at 14; the peripheral neuropathy in his feet secondary to diabetes;

5   hypertension, insomnia, back pain; and the stroke.  (AR 46-47.)  The ALJ then assigned little

6   weight to all other opinion evidence after the EOD because the stroke was not reflected in their

7   assessments.  (AR 47.)

8   **C.    The ALJ Properly Assessed and Weighed Dr. Gabriel's Opinion Before and
        After the Established Onset Date**

9

10   Plaintiff argues the ALJ failed to articulate specific and legitimate reasons for rejecting

11   Dr. Gabriel's opinions for the period prior to November 15, 2018.  (Br. 7-8.)

12   The weight to be given to medical opinions depends upon whether the opinion is

13   proffered by a treating, examining, or non-examining professional.  See Lester v. Chater, 81 F.3d

14   821, 830-831 (9th Cir. 1995).  In general a treating physician's opinion is entitled to greater

15   weight than that of a nontreating physician because "he is employed to cure and has a greater

16   opportunity to know and observe the patient as an individual."  Andrews v. Shalala, 53 F.3d

17   1035, 1040-41 (9th Cir. 1995) (citations omitted).  If a treating physician's opinion is

18   contradicted by another doctor, it may be rejected only for "specific and legitimate reasons"

19   supported by substantial evidence in the record.  Ryan v. Commissioner of Social Sec., 528 F.3d

20   1194, 1198 (9th Cir. 2008) (quoting Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)).

21   Where the treating physician's opinion is contradicted by the opinion of an examining

22   physician who based the opinion upon independent clinical findings that differ from those of the

23   treating physician, the nontreating source itself may be substantial evidence, and the ALJ is to

24   resolve the conflict.  Andrews, 53 F.3d at 1041.  However, if the nontreating physician's opinion

25   is based upon clinical findings considered by the treating physician, the ALJ must give specific

26   and legitimate reasons for rejecting the treating physician's opinion that are based on substantial

27   evidence in the record.  Id.

28   The contrary opinion of a non-examining expert is not sufficient by itself to constitute a

1    specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it

2    may constitute substantial evidence when it is consistent with other independent evidence in the

3    record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The ALJ need not accept

4    the opinion of any physician that is brief, conclusory, and unsupported by clinical findings.

5    Thomas, 278 F.3d at 957.

6            The Court concludes the ALJ properly provided specific and legitimate reasons for

7    finding Dr. Gabriel's opinion was entitled to little weight for the period before November 15,

8    2018, and the determination is supported by substantial evidence.  The ALJ's ultimate disability

9    determination as to the Plaintiff's period of disability and the RFC determination before and after

10   the EOD is also supported by substantial evidence and free from remandable legal error.

11          As summarized above, the ALJ utilized the opinions of three other doctors that found

12   Plaintiff was capable of a range of medium work.  (AR 44.)  The ALJ assigned the greatest

13   weight to the opinion of Dr. Sachdeva, the consultative examiner.  The ALJ specifically noted

14   that this opinion found Plaintiff was capable of medium work after a physical examination

15   revealed: full strength and range of motion in all joints and muscle groups, but decreased

16   sensation on the soles of the feet; that Plaintiff walked with normal gait; and his grip strength

17   was 75 pounds in the right hand and 65 pounds in the left.  (AR 44.)  The ALJ adopted this RFC

18   finding it consistent with the record, and consistent with the ME's testimony concerning minimal

19   orthopedic findings.  (AR 44.)  The ALJ also assigned some weight to the medium RFC opinions

20   of the medical consultants finding them consistent with the record and with Dr. Sachdeva's

21   opinion.

22          The Court notes that the evidence the state agency consultants considered included Dr.

23   Gabriel's treatment notes and Dr. Sachdeva's consultative exam.  (AR 80-87, 124-28.)  The

24   Court has reviewed these opinions, and Dr. Sachdeva's, and finds them to be reasonably

25   supported and consistent with the medical record as a whole, and giving deference to the ALJ in

26   resolving conflicts, the Court finds the ALJ's determinations regarding weight to Dr. Gabriel's

27   opinion before the EOD to be based on specific and legitimate reasons supported by substantial

28   evidence in the record.  See Thomas, 278 F.3d at 957 ("Although the treating physician's opinion

is given deference, the ALJ may reject the opinion of a treating physician in favor of a conflicting opinion of an examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record [and] [t]he opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.") (internal quotations and citations omitted); Tonapetyan, 242 F.3d at 1149 (examining physician's "opinion alone constitutes substantial evidence, because it rests on his own independent examination" of the claimant); Andrews, 53 F.3d at 1041; see also 20 C.F.R. § 404.1513a(b)(1) (State agency consultants "are highly qualified and experts in Social Security disability evaluation"), 20 C.F.R. § 404.1527(c)(6) (other factors, such as a doctor's degree of understanding of SSA disability programs and their evidentiary requirements are relevant in assessing weight to give to a medical opinion); Bray v. Astrue, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (ALJ properly relied "in large part on the DDS physician's assessment" in assessing the RFC).

In addition to giving great and some weight to the CE and State non-examining opinions, the ALJ assigned little weight to the less than sedentary opinions of Dr. Gabriel before the EOD finding them to be inconsistent with Plaintiff's normal physical examinations, Plaintiff's sporadic reports of back pain, and the ME Dr. Thompson's hearing testimony.  (AR 45.)  The Court finds this to be a specific and legitimate reason for assigning reduced weight to the opinions in the earlier time period.  See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are . . . unsupported by the record as a whole . . . or by objective medical findings."); Burch, 400 F.3d at 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Defendant argues the ME Dr. Thompson's testimony is consistent with the ALJ's finding of medium work before the EOD because evidence before the EOD showed many normal physical findings, such as normal gait, normal strength and reflexes, normal lumbar spine range of motion, and negative straight leg raising test (AR 73-74), and relying on the ME testimony,

1   the ALJ found the Plaintiff's mild orthopedic findings were consistent with the RFC

2   determination.  Although it is true as Plaintiff highlights that the ME testified he could not

3   disagree with Dr. Gabriel's findings concerning all of Plaintiff's ailments because of the scope of

4   his orthopedic review of the record and lack of more detailed orthopedic imaging, the ME did

5   testify that evidence from 2015 and up to the consultative exam in May of 2017 showed many

6   normal physical findings, such as normal gait, normal strength and reflexes, normal lumbar spine

7   range of motion, and negative straight leg raising test.  (AR 73-74, 86-87, 127-28, 479-80.)  The

8   opinion of Dr. Gabriel that the ME stated he could not disagree with was that dated February 22,

9   2019.  (AR 75-76; Ex. 18F, AR 559-562.)  Defendant contends that if the ALJ had adopted Dr.

10  Gabriel's limitations prior to the EOD, the ALJ would have improperly relied on an outlying

11  opinion in the context of the entire record.  The Court finds support in the record for this

12  argument, which lends to finding the ALJ's conclusions to be supported by substantial evidence.

13  See Burch, 400 F.3d at 679 (9th Cir. 2005); Shaibi v. Berryhill, 883 F.3d 1102, 1108 (9th Cir.

14  2017) ("As we cannot say that the ALJ's interpretation of the available evidence was not

15  rational.").

16        Defendant argues Dr. Gabriel's examination findings prior to November 15, 2018, failed

17  to support his assessed limitations prior to the EOD, as Dr. Gabriel documented no

18  musculoskeletal abnormalities, except for one notation of back tenderness in June of 2016 (AR

19  481-94, 532-58), and thus the minimal orthopedic findings during the period before the EOD fail

20  to support giving weight to his assessed limitations.  The Court largely agrees that these records

21  reflect only the limited notation of back tenderness on physical exam in June of 2016 (AR 493),

22  however, the Court does note these records do contain notations of complaints of back pain.  (AR

23  481-94.)  Giving due deference to the ALJ, the Court finds the ALJ's finding that the opined

24  limitations were inconsistent with the normal physical examinations and sporadic reports of back

25  pain to be a specific and legitimate reason supported by substantial evidence.  Bayliss, 427 F.3d

26  at 1216 ("[A]n ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory,

27  and inadequately supported by clinical findings.").

28        Plaintiff argues that contrary to the ALJ's conclusion, Dr. Gabriel's opinions are

consistent with the medical evidence as of September 1, 2015, and that while the ALJ found that Madrid's hypertension, insomnia and obesity were severe only as of November 15, 2018, these severe impairments were well-documented as of September 1, 2015, citing AR 455- 462, 481-485, 488, 490-494.  While Plaintiff argues the ALJ failed to find severe despite earlier records, the ALJ acknowledged these earlier records, the ALJ acknowledged that from May 23, 2016 to July 19, 2016, a period before the EOD, Plaintiff saw Dr. Gabriel for diabetes, hypertension, and back pain.  (AR 44.)  The Court has reviewed these records cited by Plaintiff.  The portion at AR 455-462, refers to records largely dated in 2016, with one in December of 2015, and one dated September 1, 2015.  The notations in the record do appear to confirm Plaintiff had readings of high blood pressure, and complained of insomnia, and was suffering from diabetic neuropathy.  (See AR 481 (June 16, 2017); AR 482 (May 16, 2017); AR 483 (April 25, 2017); AR 484 (April 11, 2017); AR 485 (February 23, 2017); AR 488 (November 17, 2016); AR 490-94 (June through October of 2016).)  However, these records are largely illegible handwritten notes, and Plaintiff has failed to demonstrate or explain why these records compel a finding of a severe ailment, in light of the ALJ's opinion as a whole and RFC determination.  See Geoffrey William H. v. Comm'r of Soc. Sec., No. 4:18-CV-05151-RHW, 2020 WL 1918098, at *8 (E.D. Wash. Feb. 24, 2020) ("A diagnosis itself does not mean that an impairment is severe . . .  To be severe, an impairment must significantly limit a claimant's ability to perform basic work activities . . . a claimant cannot simply point "to a host of diagnoses scattered throughout the medical record . . . [r]ather, a claimant must specifically identify functional limitations that the ALJ failed to consider in the sequential analysis.") (citations and internal quotation marks omitted); Webber v. Berryhill, No. 2:15-CV-00295-MKD, 2017 WL 722593, at *5 (E.D. Wash. Feb. 23, 2017) ("[T]he fact that a medically determinable condition, or diagnosis, exists does not automatically mean that the symptoms are 'severe' or 'disabling' as defined by the Social Security regulations."); Gunnells v. Comm'r of Soc. Sec. Admin., No. CV2000357TUCSHREJM, 2021 WL 6295831, at *2 (D. Ariz. Nov. 24, 2021) (same); Browning v. Colvin, No. 1:14-CV-1908-BAM, 2016 WL 1243495, at *4 (E.D. Cal. Mar. 30, 2016) ("[T]he mere fact that Plaintiff received a diagnosis of fibromyalgia does not mean that it is

either severe or disabling."); Kimbell v. Comm'r of Soc. Sec. Admin., No. CV-18-04113-PHX-SPL, 2019 WL 6522717, at *3 (D. Ariz. Dec. 4, 2019) ("The level of functional impairment determines whether an impairment is severe, and substantial evidence supports the ALJ's finding that the limitations found by Dr. Whetstone do not support the classification of Plaintiff's mental impairments as severe."); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999) ("Although the appellant clearly does suffer from diabetes, high blood pressure, and arthritis, there is no evidence to support his claim that those impairments are 'severe.' ").

For all of the above reasons, the Court finds the ALJ's assignment of reduced weight to Dr. Gabriel's opinion before the EOD was supported by specific and legitimate reasons based on substantial evidence in the record as a whole, and free from remandable legal error.

### D. Plaintiff was Afforded a Full and Fair Hearing on the Issue of the Determination of the Established Onset Date and the Determination of the EOD and Ultimate RFC is Supported by Substantial Evidence

In disability determinations, "the critical date is the date of onset of disability, not the date of diagnosis." Swanson v. Sec. of Health & Human Servs., 763 F.2d 1061, 1065 (9th Cir. 1985). The ALJ's determination of a claimant's disability onset date must be supported by substantial evidence. See Id.; A.H. v. Comm'r of Soc. Sec., No. 19-CV-03038-LB, 2020 WL 5443243, at *6–7 (N.D. Cal. Sept. 10, 2020)

SSR 18-01p provides the following requirements and guidance for determining an EOD, and direct the ALJ to begin by considering whether the EOD can be established as of the potential onset date ("POD"):

> When we need to determine a claimant's EOD, we start by considering whether we can establish the EOD as of the claimant's potential onset date (POD) of disability. The POD is the first date when the claimant met the non-medical requirements during the period covered by his or her application. The POD is the earliest date that we consider for the EOD because it affords the claimant the maximum possible benefits for the period covered by his or her application. The POD may be the same as, earlier than, or later than the claimant's alleged onset date, which is the date that the claimant alleges he or she first met the statutory definition of disability . . .
> . . . If the claimant meets the statutory definition of disability on his or her POD, we use the POD as the EOD because it would be the

1
2
3
4
5

> earliest date at which the claimant meets both the statutory definition of disability and the non-medical requirements for entitlement to benefits under title II or eligibility for SSI payments under title XVI during the period covered by his or her application. In contrast, if the claimant first meets the statutory definition of disability after his or her POD, we use the first date that the claimant meets both the statutory definition of disability and the applicable non-medical requirements as his or her EOD.

6   Soc. Sec. Ruling, Ssr 18-01p; Titles II & Xvi: Determining the Established Onset Date (Eod) in

7   Disability Claims, SSR 18-01P (S.S.A. Oct. 2, 2018).[7]

8        Thus, the starting point is the POD.  In consideration of this starting point, the Court first

9   finds that the hearing testimony does support the position that the ALJ was simply adopting an

10  amended earliest onset date or POD based on the attorney's proffer, in line with the SSR.  (See

11  AR 77 ("[Atty:] . . . basically the 9/1/15 is 17 months prior to the -- to his application date.

12  That's the earliest he could get paid.  ALJ: Okay.  Okay, I find it reasonable.  I'll adopt it.").

13       SSR 18-01p continues to describe the claimant's duty to provide evidence to prove when

14  the period of disability began.  SSR 18-01p (stating there is generally "a statutory obligation to

15  provide . . . the evidence to prove [disability] [and the] obligation includes providing [the

16  agency] with evidence to prove . . . when [the claimant] first met the statutory definition of

17  disability.").  While not discussed or cited by the parties, the SSR makes it clear that the ALJ has

18  the *discretion* to utilize a ME when inferring an onset date.

19
20
21
22

_____

[7]  The regulations also provide that the ALJ may determine the EOD to be in a previously adjudicated period, if the "rules for reopening are met and the claimant meets the statutory definition of disability and the applicable non-medical requirements during the previously adjudicated period . . . however, [reopening] is at the discretion of the adjudicator."  SSR 18-01p.  Plaintiff argues the ALJ erred by failing to reopen the prior application.  (Br. 3 n.1.) Plaintiff's only discussion of this argument is contained in one footnote.  (Id.)  The ALJ made the following findings in concluding not to reopen the previous application:

23
24
25
26

> The claimant was previously denied benefits at the reconsideration level on April 18, 2016 (lA/2).  A consultative examination from that denial, affirmed by a medical consultant, shows claimant was capable of medium work (SF/1- 5; 8F /1-2).  Claimant has submitted minimal records with unremarkable physical examinations related to his prior denial (lF /1-3; 4F / 4-9; 9F /1-7).  Thus, I concluded that he has submitted no new and material evidence to justify reopening of his prior denial.  Therefore, he was capable of medium work on April 18, 2016.  Because of the progressive nature of his diseases processes, I find that the evidence is sufficient to demonstrate that he could perform no more that light work on his established onset date of November 15, 2018, when he was 62 years old.

27
28

(AR 41.)  The Court finds that the ALJ provided legally sufficient reasons under the applicable standards for reopening the previously adjudicated period, and Plaintiff has failed to demonstrate legal error as to this aspect of the ALJ's decision.

> At the hearing level of our administrative review process, if the ALJ needs to infer the date that the claimant first met the statutory definition of disability, he or she may call on the services of an ME by soliciting testimony or requesting responses to written interrogatories (i.e., written questions to be answered under oath or penalty of perjury). The decision to call on the services of an ME is always at the ALJ's discretion. Neither the claimant nor his or her representative can require an ALJ to call on the services of an ME to assist in inferring the date that the claimant first met the statutory definition of disability.

Id.

The issue as presented by Plaintiff is not precisely an argument that the ALJ failed to obtain testimony from an ME when inferring an EOD.  However, the Plaintiff's argument that the ALJ's language used when adopting the amended proffered onset date at the hearing resulted in an unfair hearing because counsel was allegedly under the impression the date would be adopted and thus no need to question the ME that was present as to the issue of an EOD, presents analogous issues that the Court finds elucidated by a discussion of this SSR, and the decisions that have applied it and its previous version.

SSR 18-01p became applicable on October 2, 2018, and the agency is to apply it to both "new applications filed on or after the applicable date of the SSR and to claims that are pending on and after the applicable date," which "means that [the agency] will use this SSR on and after its applicable date, in any case in which we make a determination or decision."  SSR 18-01p. The regulation expressly states that the agency expects "Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions [and] [i]f a court reverses [a] final decision and remands a case for further administrative proceedings after the applicable date of this SSR, [the agency] will apply this SSR to the entire period at issue in appropriate cases when we make a decision after the court's remand."  SSR 18-01p.

The hearings before the ALJ in this matter were held on April 2, 2019, and August 8, 2019, respectively, and therefore SSR 18-01p was in effect.  "Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."  Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007) (quoting 67 Fed.Reg. at

57860); see also Gutierrez v. Astrue, No. CV 10-05399-VBK, 2011 WL 2261296, at *2 (C.D. Cal. June 7, 2011) ("While Social Security Rulings do not carry the force and effect of law, they are relevant to construe the Social Security Administration's interpretation of its own regulations and the statutes which it is empowered to administer.").

As noted above SSR 18-01p gives discretion to the ALJ who *may* call an expert to assist when inferring an EOD.  SSR 18-01p rescinded and replaced the previous SSR 83-20, which stated in relevant part:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. **At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.** If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

Titles II & Xvi: Onset of Disability, SSR 83-20 (S.S.A. 1983) (emphasis added).

The Ninth Circuit has in fact relied on SSR 83-20 predecessor in holding an ALJ was required to have elicited testimony from a medical expert when inferring an EOD.  The previous SSR gave less discretion to the ALJ, and the Ninth Circuit strictly applied the "should" language in the ruling and required the ALJ to consult a medical expert if the medical evidence was ambiguous and medical inferences needed to be made:

> In *DeLorme,* we held that in this context "should" means "must." 924 F.2d at 848. If the "medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83–20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination." *Id.; see also Morgan v. Sullivan,* 945 F.2d 1079 (9th Cir.1991) (reversing in part an ALJ's determination of the onset date of mental disorders without the assistance of a medical expert).

> In this case, the record demonstrates that Armstrong suffered from various impairments prior to March 31, 1992 . . . The record, however, does not determine when those impairments became disabling. The ALJ chose the protective date to start providing benefits. Although Armstrong was disabled on August 9, 1994,

that was not necessarily the date on which he became disabled. Indeed, in March 1994, Armstrong was diagnosed with numerous mental disorders including depression, dysthymia and feelings of social isolation. Although not diagnosed until 1994, Armstrong's depression could have been disabling long before that time. His wife divorced him in 1986 and since 1988 Armstrong has not engaged in meaningful employment. Moreover, Armstrong testified that he has suffered from depression evidenced by crying spells since before his disability insurance expired. The record also shows that Armstrong has for the last 30 years experienced deteriorating health problems. Exactly when Armstrong's various impairments became disabling is unclear. Therefore, the ALJ was required to call a medical expert to aide in determining the date of onset. *Morgan,* 945 F.2d at 1082–83; *DeLorme,* 924 F.2d at 848– 49.

The Commissioner of Social Security ("Commissioner") argues that the ALJ did not err in refusing to call a medical expert because Armstrong did not fulfill his burden of proving that he was disabled prior to March 31, 1992. If, as the Commissioner, argues an ALJ does not have to call a medical expert unless the claimant has fulfilled his burden of proving an onset date, SSR 83–20 would have no application. If the claimant proved a date, there would be no need to call a medical expert, and if the claimant, as in this case, was unable to prove a date, then the ALJ would deny disability benefits because the claimant failed to carry his burden. We refuse to interpret the claimant's burden as eliminating SSR 83–20's requirement. Consequently, we reaffirm this court's previous holding that where a record is ambiguous as to the onset date of disability, the ALJ must call a medical expert to assist in determining the onset date.

Armstrong v. Comm'r of Soc. Sec. Admin., 160 F.3d 587, 590 (9th Cir.1998).  Subsequent Ninth Circuit decisions and courts applying it particularly find ambiguity of medical records requiring inferences where the claimant was suffering from mental impairments that may have affected the ability to obtain medical treatment, before dates that medical records may actually appear in the record:

The Rule suggests that when the evidence regarding date of onset of mental impairment is ambiguous, as it is here, the ALJ should determine the date based on an informed inference. *See Blankenship v. Bowen,* 874 F.2d 1116, 1122–23 (6th Cir.1989) (recognizing progressive nature of mental impairments and purpose of SSR 83–20 to permit the ALJ to make reasonable inferences regarding onset date).  Such an inference is not possible without the assistance of a medical expert.

In this case the ALJ made the inference regarding the date of onset in favor of the government without the expertise required by SSR 83–20.  Because the ALJ's onset date determination was without a "legitimate medical basis," it cannot stand. On remand, the ALJ

1    should review the evidence of the onset of mental impairment with

2    the assistance of a medical advisor pursuant to SSR 83–20.

3    Morgan v. Sullivan, 945 F.2d 1079, 1082–83 (9th Cir. 1991); Herrera v. Barnhart, 379 F. Supp.

4    2d 1103, 1109 (C.D. Cal. 2005) (finding given the duty of the ALJ to fully and fairly develop the

5    record and assure the claimant's interest are considered, "it was especially important for the ALJ

6    to, at a minimum, obtain the testimony of a medical advisor[,] [y]et, 'the ALJ made the inference

7    regarding the date of onset in favor of the government without the expertise of a medical advisor,

8    required by SSR 83–20[,] [and] [b]ecause the ALJ's onset date determination was made without

9    a legitimate medical basis, it cannot stand.' ") (quoting Morgan, 945 F.2d at 1083).  However,

10    under SSR 83-20, the ALJ's obligations did not arise if there was *no* finding of disability:

11        Ninth Circuit case law interpreting SSR 83–20 states that it applies

12        when an ALJ is confronted with "ambiguous" evidence about the

            onset date. *Armstrong v. Comm'r of Soc. Sec. Admin.,* 160 F.3d

13        587, 590 (9th Cir.1998).

14        Here, however, the ALJ did not err by not inferring a disability

            onset date, or by not calling a medical expert to

15        help establish an onset date. Because the ALJ did not find Plaintiff

            disabled at any time from the alleged onset date, October 23, 2006,

16        through the date of the ALJ's decision, SSR 83–20 did not

            apply. *See Sam v. Astrue,* 550 F.3d 808, 810 (9th Cir.2008)

17        (because ALJ found the petitioner was not disabled at any time

            through the date of the decision, the issue of when he became

18        disabled did not arise and the procedures articulated in SSR 83–20

            did not apply); *Scheck v. Barnhart,* 357 F.3d 697, 701 (7th

19        Cir.2004) ("SSR 83–20 addresses the situation in which an

            administrative law judge makes a finding that an individual *is

20        disabled* as of an application date and the question arises as to

            whether the disability arose at an earlier time.") (emphasis added).

21        Although SSR 83–20 did not apply to the ALJ's June 6, 2012

            decision because he did not find Plaintiff disabled, if the ALJ finds

22        Plaintiff disabled on remand he should determine whether SSR 83–

            20 applies and, if so, obtain a medical expert to determine the

23        disability onset date.

24    Perkins v. Colvin, 45 F. Supp. 3d 1137, 1156 (D. Ariz. 2014).

25        Having framed the background of how the rescinded SSR was applied, the Court now

26    turns to consideration of cases applying the more recent SSR.  It is clear SSR 18-01p gives

27    greater discretion to the ALJ as to whether call for the testimony of an ME when determining the

28    EOD:

> Notably, Plaintiff's cited cases rely on SSR 83-20, which states that the ALJ '<u>should</u> call on the services of a medical advisor when onset must be inferred' (emphasis added).  The Ninth Circuit has determined that in the context of SSR 83-20, " 'should' means 'must.' " <u>Armstrong v. Comm'r of SSA</u>, 160 F.3d 587, 590 (9th Cir. 1998); <u>see also</u> <u>Diedrich</u>, 874 F.3d at 638 ("Relying on SSR 83-20, we have held that where a record is lacking and ambiguous as to the onset date of disability, 'the ALJ must call a medical expert to assist in determining the onset date.' " (citing <u>Armstrong</u>, 160 F.3d at 590)).
>
> SSR 83-20, however, was rescinded and replaced by SSR 18-01p in October 2018, before Plaintiff's April 5, 2019 administrative hearing . . . In contrast to SSR 83-20, SSR 18-01p gives ALJs the discretion to appoint a medical advisor to help determine the established onset date, but does not require them to do so[.]

<u>Elizabeth M. v. Saul</u>, No. ED CV 20-00819-DFM, 2021 WL 1060232, at *4 (C.D. Cal. Mar. 19, 2021); <u>see also</u> <u>Frederick C. v. Saul</u>, No. 8:20-CV-00018-KES, 2020 WL 6135073, at *4 (C.D. Cal. Oct. 16, 2020) ("After the effective date of SSR 18-1p, ALJs have discretion to appoint an ME to assist them in determining the established onset date ("EOD") of a progressive disease, but they are never required to do so . . . [t]he decision to call on the services of an ME is always at the ALJ's discretion.") (quoting SSR 18-01p, at § I.B.2.).

Plaintiff argues a reading of the statements at the hearing leads to only one conclusion: that the ALJ would issue a fully favorable decision as of September 1, 2015.  The Court disagrees.

The Court finds the discussion at the first hearing to be significant as to the method and reasoning of the ALJ in trying to work through the potential applicability of Dr. Gabriel's opinion, and sheds some light on the ALJ's overall analysis and acceptances of the amended alleged onset date at the second hearing.  Specifically, at the first hearing, counsel submitted that Dr. Gabriel's opinion should be given great weight, with a less than a sedentary RFC.  (AR 64.) The ALJ responded that he didn't think he could take the opinion all the way back to the alleged onset date, as Dr. Gabriel only started seeing Plaintiff in 2015.  (AR 64.)  Counsel responded that he would be agreeable to amend the onset date to when Dr. Gabriel first saw Plaintiff in September of 2015.  There was no indication that the ALJ *was* accepting the opinion, and in that first hearing, before counsel was interrupted by a knock at the door, the ALJ in fact was stating

"if I were to accept Dr. Gabriel's RFC . . . we wouldn't have to quibble about so much [about whether Plaintiff could perform medium work or light work]." (AR 64.)  At the August 8, 2019 hearing, the ALJ noted that Plaintiff had been of advanced age as of 2013; the ALJ asked Plaintiff how long he had been treating with Dr. Gabriel, and Plaintiff answered about 4 years. The ALJ stated 2015 was reasonable, and noted the 2017 internal medical medicine consultative exam had assessed Plaintiff at light.  (Br. 7; AR 76, 475-480.)[8]  The ALJ asked if counsel had a proposal for an onset date.  Counsel responded with September 1, 2015, and answered the basis for such date was the fact he had been seeing Dr. Gabriel for many years; that Plaintiff stopped working because of his uncontrolled diabetes and hypertension; that those conditions and the records reflect non-controlled diabetes and hypertension; and the September 1, 2015 date was 17 months prior to the application date, the earliest date Plaintiff could be get paid.  The ALJ stated he found such proffer to be reasonable, and that he would adopt it.  (AR 77.)

    Based on the Court's review of the hearing testimony and the opinion, while it is true the ALJ could have been more clear at the hearing that the proffered date was only being adopted as an alleged onset date, and could have discussed the fact the alleged onset date was proffered at the hearing and that he was rejecting it in the opinion, the Court does not find remandable error. Most importantly, taking the entirety of the ALJ's opinion and analysis of the evidence of record in determining the EOD, the determination was supported by substantial evidence, and Plaintiff has not demonstrated that he was not afforded a full and fair hearing on the issues relevant to the ALJ's ultimate conclusions.

    This is not a case where the ALJ's determination of the EOD was not supported by

---

[8]  It appears the ALJ may have mistakenly stated the opinion was light instead of medium here.  Plaintiff's briefing appears to state the assessment was at light.  (Br. 7.)  Plaintiff's briefing, however, did not make a point of contention (any confusion or discrepancy between light and medium), and the Defendant did not address, aside from stating Dr. Sachdeva assessed Plaintiff at medium.  (Compare Br. 7, with Opp'n 7.)  This was not mentioned in the reply briefing.  The Court is somewhat troubled by the conjunction of the apparent inconsistent statements within the opinion, however the inconsistency is somewhat clarified by the hearing testimony at one point where the ALJ and counsel have a discussion of the overlap or border of light and medium work weigh limits (AR 63), and Dr. Sachdeva's opined weight limitations do match with the definition of medium work.  See 20 C.F.R. § 404.1567(b)-(c) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.").  The Plaintiff does not dispute that the hypothetical presented to the VE matched the RFC determination after the EOD.

1   analysis and reliance on specific medical evidence in the record.  Contra Emilio U. v. Saul, No.

2   1:19-CV-03234-FVS, 2020 WL 7010226, at *5-6 (E.D. Wash. Oct. 14, 2020) ("The June 7, 2016

3   EOD does not align with any specific objective evidence to support the change in the RFC.

4   Instead, it appears that the ALJ simply made a procedural choice based on Plaintiff's second SSI

5   application . . . Therefore, the ALJ's EOD of June 7, 2016 is not supported by substantial

6   evidence, and is merely a decision made to align with Plaintiff's second application for SSI.").

7   There was not a lack of medical records for the ALJ to utilize in determining the EOD, as is

8   common in cases involving mental ailments where an ALJ that did not have medical evidence

9   was then required to infer in the absence of adequate records.  See Speight v. Apfel, 108 F. Supp.

10  2d 1087, 1092 (C.D. Cal. 2000) ("Because "[m]ental disorders may manifest themselves over a

11  period of time [,] ... the precise date of onset of a disabling psychological impairment may be

12  difficult, or impossible to ascertain, and the services of a specialist may be necessary to infer the

13  onset date.") (quoting Morgan, 945 F.2d at 1081); Quarles v. Barnhart, 178 F. Supp. 2d 1089,

14  1095 (N.D. Cal. 2001) ("Because this court concludes that the ALJ was required to consult a

15  medical expert since ambiguities existed regarding the onset date, this matter is reversed and

16  remanded . . . there was limited evidence that Quarles suffered from a mental disability prior to

17  her DLI and because there was an ambiguity as to the onset date, the ALJ should have called a

18  medical expert.").  The Court finds the ALJ's determination of the EOD to be supported by

19  substantial evidence.  The ALJ was not required to elicit further testimony from the ME

20  concerning the EOD.  Frederick C., 2020 WL 6135073, at *4 ("Plaintiff has failed to

21  demonstrate legal error by the ALJ.  SSR 18-01p expressly establishes that ALJs are never

22  required to appoint an ME to ascertain the onset date of symptoms.");

23        The Court finds Plaintiff was afforded a full and fair hearing, despite the fact there may

24  have been a misunderstanding or lack of discussion of whether the ALJ was adopting the

25  proffered date as the new alleged onset date, or Plaintiff's belief that the ALJ was adopting it as

26  the date the ALJ in fact would find Plaintiff to be disabled.  There is no statement from the ALJ

27  that he would find Plaintiff disabled.  Rather, the ALJ appeared to only accept the date as the

28  alleged onset date, and the discussion at the first hearing made it fairly clear that if the less than

sedentary opinion of Dr. Gabriel *was* adopted, the ALJ would consider the period of disability to begin potentially on a new proffered date.  The Court agrees with Defendant that the fact Plaintiff's attorney stated the proffered new onset date was essentially based on the earliest date that benefits could be payable during the discussion in question (AR 76), lends to a finding that the ALJ and counsel were simply establishing a workable alleged onset date given the date could not extend back to 2013.

The ALJ determined that from April 2016 until November 15, 2018, the minimal objective findings supported an RFC for medium work, which was supported by the findings and opinions of the consultative examiner Dr. Sachdeva, and the state agency reviewing physicians, other doctors, and was consistent with the ME testimony concerning the minimal orthopedic findings prior to the EOD.  (AR 73-74, 86-87, 127-28, 479-80)  It was also clear that, in determining the EOD, the ALJ relied upon Dr. Gabriel's November 15, 2018 treatment note in which he noted that Plaintiff's diabetes was uncontrolled, referenced his last A1C of 14, and that Plaintiff complained of limitations due to headaches and dizziness, which the ALJ found reasonable in light of the high A1C levels (AR 46, 534).

There is a special duty of the ALJ to develop the record, even when represented by counsel, Tonapetyan, 242 F.3d at 1150,[9] to inquire and explore all relevant facts, and that the Commissioner may develop the record by obtaining a consultative physical exam or by ordering testimony from a medical expert, including on the issue of establishing an onset date through inference.  However, the Court finds no error in the ALJ's statements made at the hearing, nor in the determination of the EOD as based on medical evidence in the record, nor in the ALJ's ultimate determination of the RFC.  An RFC finding is not dependent on a doctor's medical opinion, but is instead an administrative finding for the ALJ to make based on the record as a whole, 20 C.F.R. § 404.1546(c) ("the administrative law judge . . . is responsible for assessing your residual functional capacity").  The Court finds the RFC determination both before the

---

[9]  If "the claimant is unrepresented, however, the ALJ must be especially diligent in exploring for all the relevant facts." Tonapetyan, 242 F.3d at 1150.

1   EOD determined by the ALJ, to be supported by substantial evidence and free from remandable

2   error; that the ALJ was not required to adopt the alleged onset date as the EOD, but rather the

3   opinion reasonably establisees that the ALJ adopted it as an amended alleged onset date; and the

4   statement made by the ALJ at the hearing did not result in Plaintiff being denied a full and fair

5   hearing, as the ALJ was not required to call or elicit further testimony on the issue of

6   determining the EOD.

7         The Court finds the ALJ's RFC determination to be proper, reasonable, based on

8   substantial evidence in the record, and not legally deficient.  See Brown v. Berryhill, 697 F.

9   App'x 548, (Mem)–549 (9th Cir. 2017) ("Because the record evidence was not ambiguous and

10   the record was sufficient to allow for proper evaluation of the evidence, the ALJ was not

11   required to re-contact Brown's doctors or further develop the record.").  The ALJ was not

12   required to adopt the findings or opinion of any of the physicians but rather was required to

13   determine the RFC based on all of the evidence in the record.  See 20 C.F.R. § 404.1527(d)(2)

14   ("Although we consider opinions from medical sources on issues such as . . . your residual

15   functional capacity . . . the final responsibility for deciding these issues is reserved to the

16   Commissioner."); Rounds v. Comm'r of Soc. Sec., 807 F.3d 996, 1006 (9th Cir. 2015) ("the ALJ

17   is responsible for translating and incorporating clinical findings into a succinct RFC"); Vertigan

18   v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ,

19   not the claimant's physician, to determine residual functional capacity.").

20         Based on the arguments and law before the Court, as well as review of the ALJ's opinion

21   as a whole, the entirety of the hearing records, and the medical evidence of record, the Court

22   cannot find any discernible remandable error.

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28                                     **V.**

1

**CONCLUSION AND ORDER**

2   Based on the foregoing, the Court finds that the ALJ did not commit error in weighing

3 Dr. Gabriel's opinion, in failing to provide a full and fair hearing, nor in determining the

4 Residual Functional Capacity before and after the established onset date.  The Court finds the

5 ALJ's decision to be supported by substantial evidence in the administrative record, and free

6 from remandable legal error.

7   Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the

8 Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be

9 entered in favor of Defendant Commissioner of Social Security and against Plaintiff Jose

10 Edward Madrid.  The Clerk of the Court is DIRECTED to CLOSE this action.

11

12 IT IS SO ORDERED.

13 Dated: __**February 11, 2022**__

           UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28